**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>**and THE STATE OF TEXAS**<br>**ex rel. JENNIFER NUESSNER,**<br>**ROBERT HOFFMAN, and DAVID**<br>**SHORTES,**<br>*Plaintiffs*<br><br>**v.**<br><br>**MARK MALONE M.D., P.A., ET**<br>**AL.,**<br>*Defendants* | § § § § § § § § § § § § §    **No.  1:21-CV-257-RP** |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE ROBERT PITMAN
       UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Abbott Laboratories' ("Abbott") motion to dismiss, Dkt. 67, and all related briefing. After reviewing these filings and the relevant case law, the undersigned recommends that the District Judge grant the motion.

## I.    BACKGROUND

Relators Jennifer Nuessner, Robert Hoffman, and David Shortes ("Relators") brought this *qui tam* case against Dr. Mark Malone M.D., P.A. *d/b/a* Advanced Pain Care ("APC"), Dr. Mark Malone, M.D., Abbott, and Boston Scientific Corporation ("Defendants") based on their submission of allegedly false claims to state and federal government healthcare programs. Dkt. 60, at 1-2. Relators, who all once worked at APC, claim to have "personal knowledge that Defendants have committed fraud

against the federal and state governments by submitting false claims and committing other unlawful acts with respect to the Medicaid, Medicare and TRICARE/CHAMPUS programs, and other federal government healthcare programs." *Id.* at 2. Relators allege that APC provided or received remuneration "intended to induce or reward referrals" in violation of the Anti-Kickback Statute ("AKS"), wrongfully certified that it complied with the AKS, and submitted claims to government healthcare programs for "sampling and laboratory analytical procedures, and other procedures, which were either not medically necessary, or not truly provided at all." *Id.* at 3.

Abbott, a medical technology company, sells neuromodulation devices, known as Spinal Cord Stimulators ("SCS" or "STIM"), which are covered by Medicare when used to treat certain chronic pain. *Id.* at 6, 34. Abbott allegedly persuaded APC and Dr. Malone to use their SCS devices by paying for "near-daily" meals for APC staff and patients "at high-end luxury restaurants," and allowing APC to order such meals and pay for other office expenses with an Abbott credit card. *Id.* at 46-50. Abbott also allegedly paid for other events such as a Christmas party, a wedding, and a baby shower for an APC staff member. *Id.* at 55. Despite knowing that its kickbacks were "impermissible" under the AKS, Abbott allegedly provided such benefits to "influence" APC to purchase Abbott's SCS devices and implant them into patients. *Id.* at 45-48. Relators allege that Abbott "caused the submission of false claims through their kickbacks to APC." *Id.* at 3, 8-9, 14-15, 45-57.

Based on this alleged scheme, Relators brought claims against Defendants[1] for violations of the False Claims Act ("FCA") and its Texas analog, the Texas Medicaid Fraud Prevention Act ("TMFPA"). *Id.* at 57-59. Relators seek actual damages and statutory penalties for the United States of America and the State of Texas, as well as a "fair and reasonable Relator's share[.]" *Id.* at 59-60.  Abbott moved to dismiss the claims against it, arguing that the Relators failed to adequately plead causation or scienter, as well as any fraud on the government in support of their claims. Dkt. 67, at 2, 12-23. Abbott also insists that lawsuits brought under the FCA are unconstitutional because they allow private litigants to assert claims on behalf of the government for individual profit. *Id.* at 2, 23-24. Relators opposed the motion, arguing that they have plausibly pleaded their claims against Abbott. Dkt. 77. In reply, Abbott urges the Court to dismiss the claims against Abbott as the "lone remaining defendant wrongly caught up in Relators' now-resolved suit against their former employer APC." Dkt. 80, at 6.[2]

## II.    LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the

---

[1] Defendants APC, Dr. Mark Malone, M.D., and Boston Scientific Corporation were voluntarily dismissed. Dkts. 81; 89. Abbott is thus the sole remaining defendant in this lawsuit.

[2] The United States of America and the State of Texas both filed statements of interest addressing certain arguments raised in the motion to dismiss but did not otherwise offer any position on the merits of Abbott's motion. Dkts. 74; 76.

light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey*, 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III.   DISCUSSION

Abbott offers several bases for dismissal of the FCA claim, arguing that Relators failed to adequately plead causation, scienter, or the submission of a false claim. Dkt. 67, at 13-23. The undersigned agrees with Abbott that Relators have failed to adequately support their FCA claim with factual allegations showing that APC submitted a false claim to the government as a result of Abbott's alleged kickback scheme.

### A.   Relators have failed to plead with particularity that a false claim was submitted as a result of the scheme.

"[A] complaint filed under the False Claims Act must meet the heightened pleading standard of Rule 9(b)[.]" *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "Put simply, Rule 9(b) requires the 'who, what, when, where, and how' to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 727 (5th Cir. 2003). However, Rule 9(b)'s particularity requirement is "context-specific," and must be viewed in light of the "elements of the claim at hand" rather than "any single court-articulated standard." *Kanneganti*, 565 F.3d at 188.

"Rule 9(b)'s objectives [include] ensuring the complaint 'provides defendants with fair notice of the plaintiffs' claims, protect[ing] defendants from harm to their reputation and goodwill, reduc[ing] the number of strike suits, and prevent[ing] plaintiffs from filing baseless claims then attempting to discover unknown wrongs.'" *Id.* at 190 (quoting *Melder v. Morris,* 27 F.3d 1097, 1100 (5th Cir. 1994)).

In *Kanneganti*, the Fifth Circuit explained that in the context of the FCA, "if [a relator] cannot allege the details of an actually submitted false claim, [the relator] may nevertheless survive [a motion to dismiss] by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* There, the Fifth Circuit found an FCA claim satisfied Rule 9(b) where relator pleaded the "particular workings of a scheme that was communicated directly to the relator," including "his first-hand experience of the scheme unfolding as it related to him, describing how the weekend on-call nursing staff attempted to assist him in recording face-to-face physician visits that had not occurred." *Id.* at 192. Notably, that relator also alleged "specific dates that each doctor falsely claimed to have provided services to patients and often the type of medical service or its Current Procedural Terminology code that would have been used in the bill." *Id.* at 192 ("Taking the allegations of the scheme and the relator's own alleged experience as true, as we must on a motion to dismiss, and considering the complaint's list of dates that specified, unprovided services were recorded amounts to more than probable, nigh likely, circumstantial evidence that

6

the doctors' fraudulent records caused the hospital's billing system in due course to present fraudulent claims to the Government.").

Here, while Relators have pleaded the "particular workings" of the alleged kickback scheme, they did not identify any specific false claims[3] in their complaint or include "reliable indicia" that a false claim was submitted as a result of the scheme. *See* Dkt. 60; *Kanneganti*, 565 F.3d at 189 (noting that plausible FCA claims requires pleading facts showing the "existence of a billing scheme and offer[ing] particular and reliable indicia that false bills were actually submitted *as a result of the scheme*" (emphasis added)), 191-92. Relators "estimate that APC did more than one thousand stimulator implantations per year and 55-60% of those procedures were paid for by government insurance." Dkt. 60, at 46, 57 (alleging that "Relator Shortes also believes that of the roughly 2,000 patients he worked with at APC, 40% to 50% of those patients were insured by Medicare or another Government Healthcare Program"). In contrast to *Kanneganti*, where the Fifth Circuit found that the complaint satisfied Rule 9(b) "considering the complaint's list of dates that specified, unprovided services were recorded," here Relators' complaint falls short of alleging specific facts showing

---

[3] Even under Relators' false-certification theory, they "must allege with particularity an actual certification to the government that was a prerequisite to obtaining payment." *Thompson v. LifePoint Hosps., Inc.*, No. CIV.A. 11-01771, 2013 WL 5970640, at *4 (W.D. La. Nov. 8, 2013) ("Relator's allegation falls short of the requirement that a claim of false certification be pled with particularity, identifying facts such as what the certification of compliance stated, who submitted the certification, when and where it was submitted to the government, and how the actual certification was false." (citing *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997))). Here, Relators did not allege who specifically submitted the certification or where and when it was submitted to the government. *See* Dkt. 60.

that false claims were submitted as a result of the alleged kickback scheme. *See* Dkt. 60; *Kanneganti*, 565 F.3d at 192.

Moreover, as Abbott points out, courts have rejected similar uses of estimates as to the number or percentage of patients who received medical benefits from the government to satisfy Rule 9(b). *United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 894 (5th Cir. 2013) (finding that relator did not "provide reliable indicia that there was a kickback provided in turn for the referral of patients" where the "complaint fails to allege any particular details of any actual referral by a physician who entered an agreement with WCCH" … but rather "merely states that '[r]elator estimates that during [sic] past six years [WCCH] has submitted thousands of such overstated claims ... causing Medicare to pay in excess of $4,000,000,000'"); *United States ex rel. Park v. Legacy Heart Care, LLC*, No. 3:16-CV-803-S, 2018 WL 5313884, at *8 (N.D. Tex. Oct. 26, 2018) (concluding that estimate that "approximately eighty percent of LHC's patients are Medicare beneficiaries" was insufficient to provide "reliable indicia that false claims were submitted"); *United States ex rel. Sibley v. Delta Reg'l Med. Ctr.*, No. 417CV000053GHDRP, 2019 WL 1301967, at *3 (N.D. Miss. Mar. 21, 2019) (dismissing FCA claim where relators failed to allege "any details about when Corkern saw Medicaid patients or an actual instance when nurse practitioner recorded a false record"); *see also United States v. Vista Hospice Care, Inc.*, No. 3:07-CV-00604-M, 2016 WL 3449833, at *21 (N.D. Tex. June 20, 2016) (entering summary judgment in Defendants' favor because relator "did not present sufficient evidence tying the alleged scheme to

8

particular records or claims" where she "rel[ied] on the percentage of Defendants' patients who were Medicare patients" as reliable indicia that false bills were actually submitted).[4]

Moreover, the Fifth Circuit emphasized in *Kanneganti* that there the allegations supported the "logical conclusion" that "fraudulent bills were presented to the Government" because "[i]t would stretch the imagination to infer the inverse; that the defendant doctors go through the charade of meeting with newly hired doctors to describe their fraudulent practice and that they continually record unprovided services only for the scheme to deviate from the regular billing track at the last moment so that the recorded, but unprovided, services never get billed." 565 F.3d at 188. Here, in contrast, Relators alleged that during a meeting called by APC, it "became clear … that Dr. Malone ha[d] a much more exp[a]nsive view than Abbott, about which conditions should be considered viable for SCS/STIM therapy," and that contrary to Abbott's position, Dr. Malone believed that there was no "bad candidate" for STIM therapy. Dkt. 60, at 36 (alleging that Dr. Malone pushed providers to "do whatever [they] could to persuade patients to agree to SCS/STIM therapy"), 38.

Such allegations support the inference that APC would have charged the government for unnecessary STIM therapy even absent kickbacks from Abbott based on Dr. Malone's view that there is no "bad candidate" for STIM therapy. *Id.* at 38

---

[4] While the Fifth Circuit has explained that "statistics … can be reliable indicia of fraud," Relators must still link the alleged scheme to the submission of false claims. *United States ex rel. Integra Med Analytics, LLC v. Baylor Scott & White Health*, 816 F. App'x 892, 900 (5th Cir. 2020); *United States ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 767 (S.D. Tex. 2010). As explained below, because Relators' allegations are "merely consistent with" Abbott's liability and non-liability, they are insufficient to state a claim against Abbott.

(alleging that "[t]he Abbott representative showed a slide during the meeting which listed physical conditions that would make a patient a 'bad candidate' for SCS/STIM therapy. Dr. Malone took issue with all the items on Abbott's list of 'bad candidate' ailments"); *id.* ("Dr. Malone's position, stated at this meeting, is that all 'bad candidates' (mechanical pain, etc.) can find relief through SCS/STIM therapy, but APC staff must find a diagnosis for the pain condition that is recognized by payors (such as Medicare) as a condition treatable by SCS/STIM therapy."); *cf. Kanneganti*, 565 F.3d at 192. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 557). Here, while Relators' allegations are "consistent" with Abbott's liability, they are just as consistent with an absence of liability on Abbott's part given the failure to identify a false claim that resulted from the kickback scheme and Relators' own allegations demonstrating Dr. Malone's motivation to submit false claims separate and apart from any remuneration received from Abbott.

Ultimately, Relators' failure to "identify a single claim that was actually submitted pursuant to the allegedly fraudulent scheme" or provide sufficiently reliable indicia connecting the kickback scheme to the submission of false claims is fatal to their FCA claim against Abbott. *See United States ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 767 (S.D. Tex. 2010) ("The relators must, however, allege facts linking a scheme to submit false claims to the submission of false claims."); *Manuel v. BHG Holdings, LLC*, No. 2:23-CV-01644, 2026 WL 892804, at *6 (W.D. La.

10

Apr. 1, 2026) ("Where the 'Relator has failed to identify a single claim that was actually submitted pursuant to the allegedly fraudulent schemes identified in the Complaint,' dismissal is proper." (quoting *Thompson v. LifePoint Hosps., Inc.*, Civ. A. No. 11-01771, 2013 WL 5970640, at \*4 (W.D. La. Nov. 8, 2013))); *United States ex rel. Sparks v. IntegraCare Home Health Servs., Inc.*, No. 6:14-CV-480-RWS-KNM, 2017 WL 11711732, at \*11 (E.D. Tex. July 6, 2017) (recommending dismissal of FCA claim based on AKS violation where "Relator does not identify with particularity one or more patients who were obtained as a result of an AKS violation and who were admitted and billed for Medicare payments"), *R. & R. adopted*, No. 6:14-CV-480, 2017 WL 11686427 (E.D. Tex. Oct. 24, 2017). While Relators emphasize the "practical limitations facing *qui tam* relators who lack access to defendants' records and internal documents pre-discovery," such a consideration does not absolve them of their duty to comply with Rule 9(b) by alleging "reliable indicia that lead to a strong inference that false claims were actually submitted." Dkt. 77, at 19-20; *Kanneganti*, 565 F.3d at 191. Rule 9(b) is designed to prevent litigants from "gain[ing] access to a 'fishing expedition,'" *Kanneganti*, 565 F.3d at 191, and Relators fail to meet the requirements of this rule.

### B.    Relators' request for leave to amend should be denied.

In their response, Relators requested leave to amend to "address any deficiencies identified by the Court." Dkt. 77, at 25. However, "a bare request in an opposition to a motion to dismiss … without any indication of the particular grounds on which the amendment is sought," does not constitute a motion for leave to amend

11

a complaint. *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003); *see also Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 556 (5th Cir. 2007) ("We generally will not construe unelaborated, nested requests for amendment as motions to amend."). Moreover, Relators have already amended their complaint, and there is no indication in their response that they "will be able to allege the necessary 'who, what, when, where, and how' of the [submission of] alleged[ly] fraud[ulent] claims." *See* Dkt. 77; *Willard*, 336 F.3d at 387. The District Judge should deny Relators' request to amend their complaint.

## C.    The District Judge should decline to exercise supplemental jurisdiction over Relators' state-law claim.

Having concluded that the Relators have failed to state a claim under federal law, the undersigned recommends that the District Judge decline to exercise supplemental jurisdiction over Relators' claim brought under the TMFPA. Relators' sole basis for jurisdiction rests on the assertion of a federal cause of action, and under section 1367, the Court may decline to exercise supplemental jurisdiction over remaining state-law claims where it "has dismissed all claims over which it has original jurisdiction." Dkt. 60, at 6; 28 U.S.C. § 1367(c)(3); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993) ("District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed."); *see also Heggemeier v. Caldwell Cnty., Tex.*, 826 F.3d 861, 872 (5th Cir. 2016) ("[A] court should decline to exercise jurisdiction over remaining state-law

claims when all federal-law claims are eliminated before trial." (quoting *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 599 (5th Cir. 2009))).

## IV.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Judge **GRANT** Abbott's motion to dismiss, Dkt. 67, and **DISMISS** Relators' claims against Abbott with prejudice.

The referral of this case to the Magistrate Judge should now be canceled.

## V.    WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the party is served with a copy of the report shall bar that party from *de novo* review by the District Judge of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED July 14, 2026.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE